v.

**COMMONWEALTH of Kentucky,**
**Appellee.**

No. 2004–CA–000147–DG.

Court of Appeals of Kentucky.

April 29, 2005.

---

516

Gail Robinson, Assistant Public Advocate, Frankfort, KY, for appellant.

Gregory D. Stumbo, Attorney General of Kentucky, Frankfort, KY, Joseph H. Mattingly, III, Special Assistant Attorney General, Lebanon, KY, for appellee.

Before MINTON and TACKETT, Judges; HUDDLESTON, Senior Judge.[1]

## OPINION AND ORDER

HUDDLESTON, Senior Judge.

In July of 2001, Q.C., a juvenile, was charged in Marion District Court, Juvenile Division, with terroristic threatening and burglary in the second degree. Q.C. denied the charges and proceeded to an adjudication hearing before the Honorable James L. Avritt, Jr., one of Marion Coun-

ty's district court judges. After hearing the evidence, Judge Avritt dismissed the terroristic threatening charge but found Q.C. guilty of burglary. At a subsequent disposition hearing, Judge Avritt sentenced Q.C. to sixty days in detention; however, Judge Avritt suspended the sentence and placed Q.C. on supervised probation until he turned eighteen.

As a condition of his probation, Q.C. was required to be home by 9:00 p.m. every night. Despite being aware of this condition, Q.C. broke curfew when he left home on February 23, 2002, and did not return until February 26th. In response to Q.C.'s defiance, Judge Avritt issued, on February 25th, a pickup order charging Q.C. with contempt of court. Q.C. was taken into custody. On February 27th, after a detention hearing, the Honorable Connie S. Phillips, Marion County's chief district court judge, ordered Q.C. detained.

On March 4, 2002, Judge Avritt held a hearing that he referred to as a "contempt/probation revocation hearing". After hearing testimony from Q.C.'s guardian, Judge Avritt revoked Q.C.'s probation and committed him to the Department of Juvenile Justice (DJJ). Q.C. appealed to Marion Circuit Court, which affirmed the juvenile court's decision. Q.C. then moved this Court to grant discretionary review. His motion was granted.

On discretionary review, Q.C. argues that the Commonwealth filed neither a written petition charging him with contempt nor a written motion seeking to revoke his probation. Thus, Q.C. reasons, his due process rights, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and by Sections 2 and 11 of the Kentucky Constitution, were violated.

1. Senior Judge Joseph R. Huddleston sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

Even if sufficient notice had been given, Q.C. argues, he could not have been committed to DJJ for either violating his probation or contempt. According to Q.C., a juvenile court can only commit a child to DJJ when the child has been found guilty of a public offense. To support his proposition, Q.C. cites Kentucky Revised Statutes (KRS) 600.020, which defines public offense, and argues that, according to the statute, an alleged probation violation is not a public offense. Furthermore, he points out, KRS 600.020 specifically excludes contempt from the definition of public offense. Since neither contempt nor a probation violation constitutes a public offense, Q.C. concludes that the juvenile court could not have committed him to DJJ.

Q.C. observes that the juvenile code neither defines nor even mentions "probation violation"; thus, he concludes that, even though a juvenile court has the authority to impose probation, it lacks the complementary authority to revoke said probation. According to Q.C., in order to punish a child who has violated probation, a juvenile court must rely upon its inherent contempt powers, which the General Assembly specifically preserved in KRS 600.060. Consequently, Q.C. reasons, the juvenile court could not have committed him to DJJ since he was only facing contempt at the March 4th hearing and KRS 635.055 prohibits a juvenile court from committing a child to DJJ for contempt.

■ We do not agree that the juvenile court lacked authority to revoke Q.C.'s probation. While the juvenile code neither mentions probation violation nor probation revocation, when the General Assembly granted juvenile courts the authority to impose probation in KRS 635.060(2), it also imbued them with the inherent power to revoke probation. Without the power to revoke, a juvenile court would be unable to enforce probation. In addition, without the power to revoke, KRS 635.060(2) would be rendered meaningless.

Moreover, in KRS 533.050, the General Assembly granted both district and circuit courts the authority to revoke an adult criminal's probation. Juvenile probation is sufficiently similar to adult probation so that KRS 533.050 applies to probation in juvenile courts. We conclude, therefore, that the juvenile court had the authority to revoke Q.C.'s probation.

■ While we disagree with Q.C. regarding the juvenile court's authority to revoke probation, we agree with him that due process required the Commonwealth to serve him with written notice which set forth the specific grounds that constitute the alleged probation violation. If, as in this case, the Commonwealth fails to give adequate written notice, then the lack of proper notice may be a ground for reversal.[2] Despite this, we conclude that twenty-year-old Q.C.'s appeal has become moot since his commitment to DJJ terminated some two years ago when he became an adult. Thus, we can no longer grant him any relief.

It is ORDERED that this appeal be and it is hereby DISMISSED AS MOOT.

ALL CONCUR.

---

2. *See* KRS 533.050; *Baumgardner v. Commonwealth,* 687 S.W.2d 560 (Ky.App.1985); *Rasdon v. Commonwealth,* 701 S.W.2d 716 (Ky.App.1986); and *Messer v. Commonwealth,* 754 S.W.2d 872 (Ky.App.1988).